GARRETT, J.
hThe plaintiff, Ted L. Luquette, appeals from a jury verdict and judgment rejecting his claims against his uninsured/underin-sured (“UM”) carrier, Louisiana Farm Bureau Casualty Insurance Company (“Farm Bureau”), and finding that he failed to prove that the driver of the car who allegedly injured him was uninsured or under-insured. The plaintiff requests that this court reverse the trial court judgment, review the case de novo, and award damages, penalties, and attorney fees to him. For the following reasons, we affirm the trial court judgment.
FACTS
On October 16, 2011, Luquette was driving home from church in Abbeville, Louisiana.[1] A vehicle driven by Chad Mowbray and owned by Billie Borga ran a red light and collided with the vehicle driven by Luquette. Two passengers in Luquette’s vehicle were uninjured. Luquette claimed that the impact injured his back and neck and aggravated pre-existing conditions.
Borga was insured by Allstate Insurance (Indemnity) Company (“Allstate”) and Mowbray was a permissive user of the vehicle. Luquette filed a petition for damages against Allstate, Mowbray, and Bor-ga, as well as Farm Bureau, his own UM carrier. Luquette later filed a supplemental and amended petition alleging that Farm Bureau was liable for penalties and attorney fees for failing to pay under the UM coverage of the policy.
| aShortly before the jury trial began, Allstate, ostensibly on behalf of Mowbray and Borga, settled with Luquette for the Allstate policy limits of $100,000. The matter proceeded to trial solely on the plaintiffs UM claim against Farm Bureau. It was shown that Luquette had been involved in another accident in July 2011, approximately three months earlier, when his vehicle was rear-ended by another car. He claimed that he was not seriously injured in that accident and settled the matter with the other driver’s insurance company, which was Farm Bureau.
Luquette presented evidence from his treating physicians and his physical therapist concerning his injuries in this accident. He urged that he has bulging discs in his neck and back due to the accident and extensive conservative treatment had not been effective. He claimed to need surgeries on his neck and back that will cost in excess of $100,000 each. These claims were disputed by Farm Bureau.
After Luquette presented his case, Farm Bureau made an oral motion for a directed verdict, arguing that the plaintiff claiming entitlement to recover under a UM policy has the burden to prove that both the owner and the operator of the offending vehicle were uninsured or under-insured at the time of the accident. Farm Bureau asserted that, although Borga, the owner of the car that collided with the plaintiff, was insured by Allstate, there was no evidence pertaining to the UM status of the driver of the car, Mowbray. *740 Therefore, there was no proof that he was uninsured or underinsured.
According to Farm Bureau, La. R.S. 22:1295(6) provided the procedure for the plaintiff to determine whether there was any other |sinsurance available in this matter. Because Luquette failed to follow the guidelines of the statute, there was no prima facie showing that, Mowbray was uninsured or underinsured.
Luquette .argued that an adequate showing of UM status of Mowbray, and the plaintiffs entitlement to recovery, was contained in Farm Bureau’s pretrial statement of the case and in an Allstate discovery response. In its statement of the case, Farm Bureau said, “The plaintiff, Ted Lu-quette, contends that the defendant, Chad Mowbray, is at fault in causing this accident. Mowbray is insured by Allstate Insurance Company while defendant, Louisiana Farm Bureau Casualty Insurance Company, provided underinsured coverage to plaintiff. The defendants contend that plaintiff is comparatively at fault as well. Insurance coverage by the two (2) defendant insurers is not at issue in this trial.” Luquette argued this statement meant that his right to recover against his UM carrier, Farm Bureau, was not an issue at trial.
Luquette had also directed to Allstate a request for production of documents for “A certified copy of each and every policy of insurance in force and effect at the time of the accident that provided coverage for the felaim-alleged herein.” Allstate, on behalf of Borga and Mowbray, replied, “Defendants object to Request for Production No. 2 insofar as it. calls for the production of information and documents unknown by defendants to exist.” Subject to the objection, Allstate then referred to its policy and the Farm Bureau policy. Luquette contended that this response amounted to a |4statement that the defendants knew of no other insurance and this constituted prima facie proof that Mowbray was uninsured or underinsured.[2]
The discovery responses by Allstate and the pretrial statement had not been admitted into the record at trial by the plaintiff. Luquette asked the court to allow the evidence to be reopened to introduce those items. The trial court, over an objection by. Farm Bureau, allowed the reopening of the plaintiffs case. Allstate’s discovery responses were then admitted into evidence along with the record containing the pretrial statement. The trial court noted on the record that it would give a jury charge regarding the manner in which entitlement to UM recovery can be established, noting this was a question for the jury to decide. No objection was lodged by the plaintiff to the case being handled in this manner.
After the plaintiff rested again, Farm Bureau presented its case. Farm Bureau presented medical evidence which called into question the nature and extent of the plaintiffs claimed injuries. Prior to submitting the matter to the jury, the trial court and counsel extensively discussed the proposed jury interrogatories and charge. The final jury charge included an instruction regarding proof of the UM status of the offending motorist which is set out below.- The first question on the jury interrogatory form was:
*741 1 ¿“Do you find that the plaintiff, Ted Luquette, has sufficiently proven that both Chad Mowbray and Billie Borga were uninsured or underinsured?”
Counsel for the parties were asked whether there were any comments or objections to the charge or the jury instructions for the record. Both counsel stated they had no objections and the jury was charged in accordance with the agreed-upon instructions,
During deliberations, the jury sent the court a note saying, “Proof of insurance from owner and driver. Subpoena and results.” The court brought the jury back into the courtroom and the foreperson stated that they wanted to see if there was proof of the driver and owner having insurance. The foreperson said they were trying to find out “the answer to thé first question.” With consent from both counsel, the trial court allowed the jury to view certain items of evidence admitted at trial, which included redacted insurance policies, the requests for production, and the réc-ord.
After further deliberation, the jury marked “No” in response to the first question on the jury form, based .upon a vote of 10-2. Because the jury answered the question negatively, this ended deliberation and the plaintiff recovered nothing from Farm Bureau. The trial court signed a judgment incorporating the jury verdict and dismissing Luquette’s claims against Farm Bureau.
Luquette filed a motion for judgment notwithstanding the verdict (“JNOV”) or, in the alternative, for new trial, arguing that the jury verdict was legally incorrect and that judgment was clearly contrary to the law and the evidence. Luquette asserted that Farm Bureau stipulated to UM | ^coverage in its statement of the case and this was a judicial confession relieving him of the burden of proving that Mowbray was uninsured or underinsured. Luquette also argued that, based on the Allstate discovery response, it was reasonable to conclude that the Allstate. policy was the only one covering his claims and Mowbray was insured solely under .the Allstate policy issued to Borga. According to Lu-quette, the only issues at trial were damages and whether Farm Bureau was liable for penalties and attorney fees.
In a written opinion, the trial court denied the motions for JNOV and new trial, reasoning that there must be proof of a lack of other insurance coverage as to both the owner and the operator of the offending vehicle in order to trigger entitlement to recovery under the UM policy and Lu-quette failed to carry this burden of proof. Luquette appealed thé jury verdict and the denial of the motions for JNOV and new trial.
PROOF OF UNINSURED OR UNDER-INSURED MOTORIST STATUS
On appeal, Luquette is represented by new counsel.[3] Only one “basic error” is asserted on appeal, which Luquette claims led to an adverse jury verdict. According to Luquette:
The only issue for review is whether the trial judge erred in submitting the question of proof of uninsured or underin-siired status of the driver and owner of the car to the jury.
This assignment of error is without merit.
[ yLegal Principles
A person insured under the uninsured motorist provision of a particular *742 policy must establish that he is “legally entitled to recover” damages from the owner or operator of an uninsured or un-derinsured motor vehicle in order to obtain coverage thereunder. Hart v. Allstate Ins. Co., 437 So.2d 823 (La.1983). Accordingly, to establish a “satisfactory proof of loss” of an uninsured motorist claim, the insured must establish that the insurer received sufficient facts which fully apprise the insurer that the owner or operator of the other vehicle involved in the accident was uninsured or underinsured, that he was at fault, that such fault gave rise to damages and establish the extent of those damages. Hart v. Allstate Ins. Co., supra; Delores M. v. Southern Farm Bureau Cas. Ins. Co., 44,883 (La.App.2d Cir.1/6/10), 29 So.3d 654; Finley v. “ABC” Ins. Co., 06-581 (La.App. 5th Cir.12/27/06), 946 So.2d 330.
The trial court is required to instruct jurors on the law applicable to the cause submitted to them. Abney v. Smith, 2009-0794 (La.App. 1st Cir.2/8/10), 35 So.3d 279, writ denied, 2010-0547 (La.5/7/10), 34 So.3d 864; La. C.C.P. art. 1792. Adequate jury instructions are those which fairly and reasonably point out the issues and which provide correct principles of law for the jury to apply to those issues. Abney v. Smith, supra; Jones v. Lingenfelder, 537 So.2d 1275 (La.App. 2d Cir.1989), writ denied, 539 So.2d 631 (La.1989); Bruce v. Rogers Oil Tool Servs., Inc., 556 So.2d 922 (La.App. 3d Cir.1990).
(sThe trial court is responsible for reducing the possibility of confusing the jury and may exercise the right to decide what law is applicable and what law the trial court deems inappropriate. The charge must correctly state the law and be based on evidence adduced at trial. Abney v. Smith, supra; Crooks v. National Union Fire Ins. Co., 620 So.2d 421 (La.App. 3d Cir.1993), writs denied, 629 So.2d 391, 392 (La.1993).
Louisiana jurisprudence is well established that an appellate court must exercise great restraint before it reverses a jury verdict because of erroneous jury instructions. Abney v. Smith, supra; Billiot v. Terrebonne Parish Sheriff’s Office, 98-0246 (La.App. 1st Cir.2/19/99), 735 So.2d 17, writ denied, 99-1376 (La.7/2/99), 747 So.2d 22. Trial courts are given broad discretion in formulating jury instructions, and a trial court judgment should not be reversed so long as the charge correctly states the substance of the law. Peironnet v. Matador Res. Co., 2012-2292 (La.6/28/13), 144 So.3d 791.
But when a jury is erroneously instructed and the error probably contributed to the verdict, an appellate court must set aside the verdict. In the assessment of an alleged erroneous jury instruction, it is the duty of the reviewing court to assess such impropriety in light of the entire jury charge to determine if the charges adequately provided the correct principles of law as applied to the issues framed in the pleadings and the evidence and whether the charges adequately guided the jury in its deliberation. Ultimately, the determinative question is whether the jury instructions misled the jury to the extent that it was prevented from dispensing justice. InThe standard of review in determining whether an erroneous jury instruction has been given requires a comparison of the degree of error with the jury instructions as a whole and the circumstances of the case. Abney v. Smith, supra.
La. C.C.P. art. 1793(C) states:
A party may not assign as error the giving or the failure to give an instruction unless he objects thereto either before the jury retires to consider its *743 verdict or immediately after the jury retires, stating specifically the matter to which he objects and the grounds of his objection. If he objects prior to the time the jury retires, he shall be given an opportunity to make the objection out of the hearing of the jury..
When a party fails to object to jury instructions in the trial court, he is precluded from raising an objection on appeal. See Abshire v. Wilkenson, 2001-0075 (La.App. 3d Cir.5/30/01), 787 So.2d 1158; Stroud v. Liberty Mut. Ins. Co., 429 So.2d 492 (La.App. 3d Cir.1983), writ denied, 437 So.2d 1147 (La.1983); Prince v. Jacobs, 400 So.2d 297 (La.App. 3d Cir.1981), writ denied, 406 So.2d 609 (La.1981). However, where jury instructions or interrogatories contain a “plain and fundamental” error, the contemporaneous objection requirement is relaxed and appellate review is not prohibited. Berg v. Zummo, 2000-1699 (La.4/25/01), 786 So.2d 708; Beard v. Coregis Ins. Co., 2007-314 (La.App. 3d Cir.10/17/07), 968 So.2d 278; Campbell v. Hospital Serv. Dist. No. 1 Caldwell Parish, 37,876 (La.App.2d Cir.12/10/03), 862 So.2d 338, writ denied, 2004-0069 (La.3/19/04), 869 So.2d 852.
| ^Discussion
A portion of the jury instructions, not objected to by Luquette, explained what had been stipulated to and what was in dispute:
It has already been stipulated and you should accept as proven, that the accident of October 16, 2011, was caused by the fault of Chad Mowbray. What is disputed is what damages, if any, were sustained by Ted Luquette, as a result of the accident and whether Louisiana Farm Bureau Casualty Insurance Company may be responsible for the payment of such damages. [Emphasis supplied.]
That portion of the jury instruction dealing with proof of the UM status of the offending motorist stated:
The claimant, who makes a claim on his insurance policy under the uninsured motorist provision, has an obligation to produce a satisfactory proof of loss. “Satisfactory proof of loss” in a claim pursuant to uninsured motorist coverage is receipt by the insurer of “sufficient facts which fully apprise the insurer that (1) the owner and operator of the other vehicle involved in the accident was uninsured or under insured; (2) that the offending motorist was at fault; (3) that such fault gave rise to damages; and (4) establish the extent of those damages.”
The burden of proving uninsured/un-derinsured status of the offending motorist rests with the plaintiff. La. R.S. 22:1295(6) provides procedures through which the plaintiff may establish a prima facie case that the owner, and operator were either uninsured or underinsured.
The court then quoted La. R.S. 22:1295(6), which provides:
In any action to enforce a claim under the uninsured motorist provisions of an automobile liability policy the following shall be admissible as prima facie proof that the owner and operator of the vehicle involved did not have automobile liability insurance in effect on the date of the accident in question:
(a) The introduction of sworn notarized affidavits from the owner and the operator of the alleged uninsured vehicle attesting to their current addresses and declaring that they did not have automobile liability insurance in effect covering the vehicle in question on the date of the accident in question. When the owner and the operator of the vehicle in question are Inthe same person, this fact shall be attested to in a single affidavit.
*744 (b) A sworn notarized affidavit by an official of- the Department of Public Safety and Corrections to the effect that inquiry has been made pursuant to R.S. 32:871 by depositing the inquiry with the United States mail, postage prepaid, to the address of the owner and operator as shown on the accident report, and that neither the owner nor the operator has responded within thirty days of the inquiry, or that the owner or operator, or both, have responded negatively as to the required security, or a sworn notarized affidavit by an official of the Department of Public Safety and Corrections that said department has not or cannot make an inquiry regarding insurance. This affidavit shall be served by certified mail upon all parties fifteen days prior to introduction into evidence.
(c) Any admissible evidence showing that the owner and operator of the alleged uninsured vehicle was a nonresident or not a citizen of Louisiana on the date of the accident in question, or that the residency and citizenship of the owner or operator of the alleged uninsured vehicle is unknown, together with a sworn notarized affidavit by an official of the Department of Public Safety and Corrections to the effect that on the date of the accident in question, neither the owner nor the operator had in effect a policy of automobile liability insurance.
(d) The effect of the prima facie evidence referred to in Subparagraphs (a), (b), and (c) of this Paragraph is to shift the burden of propf from, the party or parties alleging the uninsured status of the vehicle in question to their uninsured motorist insurer.[4]
The court also instructed the jury:
If the plaintiff fails to follow this procedure — these procedures, the burden remains on him to' prove such facts by other admissible evidence.
| ^Luquette concedes that there was no objection to the jury instructions by his trial counsel, but now claims they contain a “plain and fundamental” error requiring a relaxation of the contemporaneous objection requirement on appeal. The plaintiff essentially urges that the question of whether Mowbray was uninsured or un-derinsured was a question of law dealing with insurance coverage and it was a fundamental error for the trial court to submit that question to the jury.
Luquette cites La. C.C.P. art. 1562(D) for proposition that the issue of insurance coverage shall be decided by the court alone. This argument is completely unfounded. The plaintiff has cited only a portion of the statute and has taken it out of context. The entire statute states:
D. If it would simplify the proceedings or would permit a more orderly disposition of the case or otherwise would be in the interest of justice, at any time prior to trial on the merits, the court may order, with the consent of all parties, a separate trial on the issue of insurance coverage, unless a factual dispute that is material to the insurance coverage issue duplicates an issue relative to liability or damages. The issue of insurance coverage shall be decided by the court alone, whether or not there is to be a jury trial on the issue of liability or damages'.
*745 A reading of the entire statute shows that parties may choose to bifurcate the issues of insurance coverage, liability, and damages. In such a scenario, with the consent of the parties, there may be a separate trial on the issue of insurance coverage with the insurance coverage issue to be decided by the court alone. This was not the situation in this case, .and La. C.C.P. art. 1562(D) is not applicable.
In Citgo Petroleum Corp. v. Yeargin, Inc., 95-1574 (La.App. 3d Cir.7/3/96), 678 So.2d 936, writ granted, remanded, 96-2000 (La.11/15/96), 682 So.2d 746 and 96-2007 (La.11/15/96), 682 So.2d 747, a case involving a liability insurance policy, the defendant and an insurance company argued that the trial court erred in taking the issue of insurance coverage away from the jury, in violation of La. C.C.P. art. 1562(D), where the parties had not consented to the trial court considering the question of coverage. The third circuit noted that La. C.C.P. art. 1731 establishes the right to a trial by jury except in cases enumerated in La. C.C.P. art. 1732, and insurance coverage was not an enumerated exception. The court noted that La. C.C.P. art. 1735 states that a party may. specify the issues it wishes to be tried by jury; otherwise he is considered to have demanded trial by jury for all issues so triable. The third circuit found that a jury was not prohibited from deciding the issue of insurance coverage and determined that the trial court’s denial of the defendant’s right to trial by jury required a remand to the trial court for exercise of that right. The Louisiana Supreme Court granted writs. It did not state that the third circuit erred in its opinion on jury consideration of insurance coverage, but found that, since the appellate court had all information necessary to decide the case, it was required to do so rather than remanding the case to the trial court for a jury trial. The matter was remanded to the third circuit for consideration of the assignments of error not reached, citing Gonzales v. Xerox Corp., 254 La. 182, 320 So.2d 163 (1975).
The issue of whether an insurance policy provides coverage is not a purely legal question when a factual finding is necessary in order to reach the coverage issue. See Gaylord Container Corp. v. CNA Ins. Companies, 1999-1795 (La.App. 1st Cir.4/3/01), 807 So.2d 864, writs denied, 2001-2368, 2001-2376 (La.12/7/2001), 803 So.2d 31. In such situations, submitting the issue of insurance policy coverage to a jury is appropriate. See Billiot v. Terrebonne Parish Sheriff’s Office, supra.
Proof of the UM status of both the owner and the operator of the offending vehicle was necessary for recovery against Farm Bureau, as Luquette’s UM carrier. Under the facts of the present case, this was not a legal question involving the existence of coverage or the inter-' pretation of the Farm Bureau policy. It was a simple factual issue upon which Lu-quette had the burden of proof,'just as he did on the issue of the fault of Mowbray (which was stipulated), that the fault caused damage, and the amount of that damage. A finding of fact was necessary to reach the issue of entitlement to recovery under the UM policy. Our legislature has provided a procedural mechanism for this purpose. The trial court did not err in submitting this issue to the jury for decision.
Luquette also contends that he provided sufficient proof of the UM status of Mowbray by virtue of Farm Bureau’s statement of the case and Allstate’s discovery response, which he claims constitute judicial confessions of UM liability on the part of Farm Bureau. Luquette maintains that Farm Bureau, in its statement of the *746 case, made a judicial confession of its obligation to pay under its UM policy. A judicial confession is a declaration made by a party in a judicial proceeding. That confession constitutes full proof against the party who made it. La. C.C. art. 1853. A judicial admission or confession is a party’s express acknowledgment of the 1 ^correctness of the fact or the act charged against him by his adversary. Such a confession is designed to dispense with evidence and has the effect of withdrawing the subject matter of the confession from issue. Sanders v. Earnest, 34,656 (La.App.2d Cir.7/24/01), 793 So.2d 393.
Luquette argues that the case of Young v. Martinez, 98-674 (La.App. 5th Cir.11/25/98), 722 So.2d 1143, is factually and legally similar to the present matter and establishes that Farm Bureau’s statement of the case constituted a judicial confession of Farm Bureau’s obligation to pay under the UM portion of the policy. We find that Young is distinguishable from the present matter.
In Young, the plaintiff was a passenger in a car that was rear-ended by a vehicle owned and driven by the defendant. The plaintiff sued the defendant and his insurer, as well as her own UM insurance carrier. The defendant and his insurer settled with the plaintiff for the policy limits. Liability was stipulated prior to trial. A bench trial was held against the plaintiffs UM carrier. At the close of the plaintiffs case, the UM carrier moved for involuntary dismissal, arguing that the plaintiff failed to show that the tortfeasor was uninsured or underinsured. The court deferred ruling on the motion and, on rebuttal, the plaintiff testified that it was her understanding that she had settled with the tortfeasor and his insurer for the policy limits and that the tortfeasor had no other insurance. The trial court denied the motion for involuntary dismissal. The appellate court affirmed, noting that, even if the UM status of the tortfeasor had not been stipulated by the UM carrier, it was proven by the plaintiffs rebuttal testimony.
hJn the present case, as noted by the trial court both during trial and in denying Luquette’s motions for JNOV and new trial, Luquette had the burden of proving the UM status of both the owner and the operator of the offending vehicle. Luquette asserts that Farm Bureau’s statement of the case was a stipulation of liability. A stipulation has the effect of a judicial admission or confession which binds all parties and the court. Stipulations between the parties in a specific case are binding on the trial court when not in derogation of law, and are the law of the case. It is well settled that a stipulation amounts to full proof against those who made it. It has the effect of withdrawing a fact from issue and disposing wholly with the need for proof of that fact. Young v. Martinez, supra. Farm Bureau’s statement of the case was not a stipulation and merely acknowledged that Allstate had issued a policy to Borga, and that Farm Bureau had issued a UM policy to Lu-quette. The burden of proving the UM status of Mowbray still rested with Lu-quette.
Further, the discovery response by Allstate simply states that its policy is the only one about which it had any knowledge. It was not a statement that Mow-bray was solely covered by the Allstate policy and was underinsured.
The plaintiffs argument, made both below and before us, that Mowbray’s UM status was an uncontested issue, is simply not borne out by the record. Before any evidence was adduced at trial, the trial judge provided the jury with some preliminary instructions. These instructions were expressly approved by counsel before *747 they were read to the jurors. |17Notably, the jury was informed that the only matter that had been stipulated was that Mow-bray was at fault in causing the accident. The jurors were specifically instructed that the matters in dispute were what damages, if any, were sustained by the plaintiff, and whether Farm Bureau was responsible for payment of any damages. The matter proceeded to trial and it was incumbent upon the plaintiff to prove all of the necessary elements to recover.
As found by the jury, and by the trial court in denying Luquette’s motions for JNOV and new trial, the plaintiff simply failed to establish his entitlement to recover against his UM carrier, because he failed to show that Mowbray had insufficient insurance to cover Luquette’s claimed damage. The trial court did not err in submitting to the jury the issue of Luquette’s entitlement to recover from Farm Bureau and the jury did not err in finding that he failed to carry his burden of proof.[5]
CONCLUSION
For the reasons stated above, the jury verdict and judgment in favor of the defendant, Louisiana Farm Bureau Casualty Insurance Company, dismissing the claims of the plaintiff, Ted L. Luquette, are affirmed. Costs in this court are assessed to the plaintiff.
AFFIRMED.
CARAWAY, J., concurs with written reasons.

. The 58-year-old plaintiff is employed as a law clerk for Judge Sylvia R. Cooks, of the Louisiana Third Circuit Court of Appeal. This case was tried in Vermilion Parish, and then appealed to the third circuit where briefs were filed and the matter was argued in February 2015. On March 25, 2015, by order of the Louisiana Supreme Court, the appeal was transferred to this circuit, based on the fact that the majority of the judges on the third circuit recused themselves.

. Luquette pointed out that, despite extensive efforts, no one had been able to contact Mow-bray or serve him with process. Early in the proceedings, Luquette petitioned the court for appointment of an attorney to represent Mow-bray and Borga, because efforts to locate and serve them had been unsuccessful. A general denial of the claims against them was filed on behalf of Mowbray and Borga by their court-appointed attorney.' That attorney later withdrew, and Mowbray and Borga were represented by the attorney for Allstate.

. At oral argument, plaintiffs counsel stated that a malpractice suit had been filed against plaintiffs trial counsel.

. The statute provides methods for establishing prima facie proof of the UM status of the owner and driver of the offending vehicle. Failure to follow any' one of these procedures set forth in the statute simply results in the burden of proof remaining with the plaintiff .to prove such facts by any other admissible evidence. Scherer v. Chaisson, 469 So.2d 510 (La.App. 3d Cir.1985); Loupe v. Tillman, 367 So.2d 1289 (La.App. 4th Cir.1979); Finley v. “ABC” Ins. Co., supra.

. The plaintiff makes several arguments in his brief which were not assigned as error and are not properly before this court for decision. Luquette argues that the jury did not fully consider the evidence given to it because, after it was given all the court documents, it "took no more than 15-30 minutes before returning their verdict that plaintiff had not sufficiently proved the UM/UIM status of Mowbray and Borga." The argument that the jury did not fully consider the evidence is unfounded and unsupported by the record.